LittletoN, Judge,
dissenting: I cannot concur in the opinion of the majority dismissing the petition for lack of jurisdiction to consider it notwithstanding the Special Jurisdictional Act of February 27, 1942. I do not construe the special act as in any way infringing upon the Judicial Department of the Government or upon the proper exercise by the court of its judicial duties. On the contrary, I construe the act as an authorization by the lawmaking Departments of the Government to the court to consider plaintiff’s claims in the light of the waivers by the Legislative and Executive Departments of the Government of limitations, res adju-dicaba, and certain rights and defenses of the Government, mentioned in Sections 1 and 2 of the act, which the Government, as the defendant in the suit, might otherwise bring forward and successfully insist upon in opposition to the jurisdiction of the court and the right of plaintiff to make and maintain the claims. I do not think Congress intended to go, and I do not find anything in the special jurisdictional act which goes, beyond this. Section 1 of the act is a grant of jurisdiction and authority to hear, determine, and enter judgment notwithstanding certain defenses mentioned there *389 in, including the waivers of defenses which might otherwise be made, as more specifically described in Section 2 of the act. No special significance should be attached to the word “directed” appearing in the first clause of Section 2. Section 1 conferred the jurisdiction and authority to be exercised by the court and section 2 simply described in detail the basis of the liability which the Government, acting through the Legislative and Executive Departments, was willing to assume in the circumstances, and by this section 2 the Government consented to be charged on the basis specified in accordance with such findings and such measurements as the court shall make in accordance with the jurisdiction and authority conferred by section 1.
I think it is clear that Congress by an act approved by the President may do this without in any way interfering with the proper judicial function of the court although the reason of Congress in so doing is purely moral or equitable rather than legal, and, notwithstanding the plaintiff has once lost his case in this court in a suit under the contract. It seems to me that the Sovereign, which acts through its Legislative and Executive branches in respect of the institution of suits against it and through the Judicial branch in the determination and adjudication of claims against it, in such suits, is not exactly in the sainé situation as a private litigant might be in regard to the matter of assuming a liability, or liabilities, on a specified basis and authorizing and empowering this court to adjudicate and determine such assumed liabilities in a second suit. The provisions of the Special Act of February 27, 1942, now form the legal basis for the adjudication of the claims presented in the petition filed thereunder. Alcock v. United States, 74 C. Cls. 308. See, also, Gherohee Nation v. United States, 270 U. S. 476, 486. I do not think the case of United States v. Klein, 13 Wall. 128, is in point here.
For the reason stated I think the court has jurisdiction and authority in the premises and should proceed to hear, determine, and enter judgment under the provisions of the jurisdictional act and upon the record in the case.
Jones, Judge, took no part in the decision of this case.
*390 HISTORY OF THE ISSUE
The Reporter's history of the issue:
The original petition in the case of Allen Pope v. The United States, No. K-366, asking for damages in the amount of $306,825.33, was filed August 23,1929.
After hearing and report of a commissioner of the court, and after trial of the case, an opinion by Chief Justice Booth was rendered March 7, 1932, awarding the plaintiff a judgment for $45,174.46. Plaintiff’s motion for a new trial was overruled June 5,1933. Reported 76 C. Cls. 64.
Leave to file a second motion for a new trial was denied August 15, 1938.
' On a third motion for a new trial, an opinion per curiam, overruling the motion, was filed June 10, 1935. Eeported 81 C. Cls. 658.
Judgment for $45,174.46 was paid July 15, 1935. (Treasury Warrant No. 575.)
Plaintiff’s motion for leave to file motion for amendment of record of judgment was filed October 14, 1935, and was overruled October 24, 1935, on the ground that the court was without jurisdiction.
Plaintiff’s second motion for leave to (file motion for amendment of record of judgment was filed November 4, 1935, and overruled January 6, 1936.
Plaintiff’s motion for leave to file a fourth motion for a new trial, or alternatively, motion for new trial, was filed September 27, 1937, and allowed November 16, 1937.
On the fourth motion for a new trial, an opinion, per curiam, overruling the motion, was filed December 0, 1937. Eeported 86 C. Cls. 18.
Plaintiff’s petition for writ of certiorari was denied by the Supreme Court March 28,1938. Eeported 303 U. S. 654.
The Special Jurisdictional Act (H. E. 4179), under the provisions of which the issues are presented in the instant case (No. 45704), was approved February 27, 1942; 56 Stat. 1122.
Under the special act, plaintiff’s petition in the instant case was filed July 7, 1942, the amount claimed being $162,616.80.
*391 The case was referred to a commissioner of the court, whose report was filed March 3, 1943, the record in. the prior case, No. K-366, being transferred to the instant case, and other evidence being presented.
Upon the report of the commissioner and the briefs of the parties the case was argued before the court on December 8, 1943.
On January 3,1944, the decision of the court was rendered, as set forth above.
The plaintiff in case No. K-366 sued on a contract entered into December 3, 1924, for the construction of a tunnel designed to carry water for the District of Columbia. In that suit the plaintiff was given judgment for $45,174.46, as above stated. This judgment consisted of: (1) an item of $13,290.22, representing the expense of substitution ordered by the contracting officer in method but not authorized by the contract; (2) an item of $2,500 for timber used by the contractor and authorized by the contract; (3) an item of $231.54 for concrete actually placed and authorized by the contract to be placed; (4) an item of.$500 earned, withheld and wrongfully retained for indemnification; (5) items aggregating $17,427.70 for excess work due to defendant’s erroneous lines and grades, including 723 cubic yards of 'material caved-in over the arch of the rock sections of the tunnel, and hereinafter to be referred to; (6) and an item of $11,225, damages for delay due to interference.
Section Y (1) of the petition in the instant case claims (a) $969, excavation of caved-in material, 57 cubic yards at $17 between an original contract line, known as the “B” line, and the “B” line as lowered three inches by the contracting officer; (b) $4,879, for excavation of 287 cubic yards of cave-ins at $17, due to omission of sidewall lagging; and (c) $4,879, for filling the 287 cubic yards of caved-in spaces at $17, a total of $10,727. This claim of $10,727 was made in Section XII of plaintiff’s petition in case No. K-366. The court’s finding made relative thereto is No. XI. Becovery was denied.
Section Y (2) of the petition in the instant case claims $81,277 for excavation of 4,781 cubic yards of material at $17, *392 caved-in over the tunnel arch. The petition sets forth the total cubic yardage of such material as 5,561 cubic yards, and ■ excludes therefrom (a) 57 cubic yards claimed as above in Section V (2) of this petition, and (b) 723 cubic yards allowed for by the court, Finding X in case No. K-366, and mentioned hereinabove. There was no claim in the original petition in ease No. K-366 for the excavation as such of this 4,781 cubic yards, but there was therein a claim for grouting and dry packing the space voided by the 5,561 cubic yards of caved-in material. See Section IY and V of the original petition, case No. K-366. For dry packing in this area and grouting see the court’s findings in case No. K-366, Findings III and IY, on which the court made no allowance.
Section Y (3) of the petition in the instant suit makes claim to $14,240.70, which plaintiff says remains unpaid, for dry-packing the 5,561 cubic yards mentioned above (Section Y (2) of the instant petition), being a balance of 4,746.9 cubic yards of dry packing at $3 per cubic yard, ■ plaintiff having been paid for 814.1 cubic yards only on the contracting officer’s estimate. This item is substantially Section V of the original petition. See the court’s findings in case No. K-366, Findings III, IY, and VI. This item was not allowed in the judgment.
Section V (4) of the petition in the instant suit lays claim to $56,362.10 as compensation for 18,790.7 bags of cement at $3.00 per bag. The correct extension is $56,372.10. This is a claim for grouting, embodied in Section IY of the original petition, and embraced in the court’s findings in case No. K-366, Nos. Ill and VI, there indicated as consisting of 13,891 bags of cement primped in grout into cavities in the timbered sections, not paid for, and 4,899.7 bags of cement used in grout poured into cavities in the rock section, the item of 4,899.7 bags being 9,032 bags consumed less a limit of 4,132.3 bags paid for. Thé court did not include this item in its judgment of recovery.
The total number of bags of cement used in grouting, 22,923 bags, being the aggregate of 13,891 bags and 9,032 bags, converted by the liquid method described in the opinion of the court, 76 C. Cls. 85, using 40 per cent of the dry-packed area as void, and one bag of cement to 2.62 cubic feet of *393 grout, represents 5,561 cubic yards of space dry packed and grouted.
Unit prices named in the contract were: for excavating $17 per cubic yard, for dry packing $3 per cubic yard, and for grouting $3 per bag.
The court held in the instant case, as hereinabove stated, that the petition of plaintiff must be dismissed. The court made no findings of fact.