Littleton, Judge,
delivered the opinion:
This suit was brought pursuant to the act of May 28, 1928, Private 226, 70th Congress, S. 3308, which confers jurisdiction upon this court to award the plaintiff compensation, with interest, for losses and damages, if any, resulting from the action of governmental agencies, particularly the action of officers of the War Department, Spruce Production Division, Signal Corps, U. S. Army. In substance the act permits plaintiff to prosecute his action and recover compensation for his losses and damages, if any, which he may have suffered through action of governmental agencies in commandeering, requisitioning, controlling by compulsion or otherwise, allocating or directing the contracting for, or delivery of, spruce and fir lumber which he owned or had sold under firm and binding contracts to others than the allied governments, and waives the defense of no taking or other action by officers under color of authority, or the defendant’s nonresponsibility for a tort.
In the former action brought under the general jurisdiction of this court, 61 C. Cls. 312, the issue presented the contention of commandeering of approximately 3,000,000 feet of the said timber then in transit in 301 cars to Atlantic ports for shipment to private purchasers in England. This court dismissed the petition, holding that there was ño commandeering *326 or no action by the Army officers concerned for which the Government could be held accountable. The private act under which the present action was brought waives that defense and broadens the field of the defendant’s responsibility. But there is a very definite limitation in the statute. The act specifically requires that the plaintiff’s right of recovery shall be limited to the spruce and fir lumber “which he owned or had sold under firm and binding contracts to others than the allied governments.” Under the proper construction of the provisions of the jurisdictional act and under the facts in this case, we are of opinion that plaintiff is entitled to judgment only for the losses sustained by him in connection with the 301 cars of lumber which were the subject matter of the conference of February 11, 1918, and the previous action in this court. The 301 cars of spruce and fir lumber had been delivered by the mills, inspected, and approved, and it was then in plaintiff’s possession and had been sold by him. It was allocated by Major Leadbetter of the spruce production division, War Department, to England, France, and Italy, and the amount paid to plaintiff by these governments resulted in a loss of $163,247.17 to him. The 5,290,363 feet, representing the undelivered portion of “G” and “H” spruce, for which he had received orders from foreign concerns, and for which he had placed domestic orders with American mills, was not owned by the plaintiff nor sold by him under firm and binding contracts.
Plaintiff, a dealer in the United States in spruce and other hardwoods for export to the United Kingdom, had, at the time this country entered the war in 1917, received various orders for a large quantity of certain grades of spruce and fir and, in turn, transmitted his orders to the Pacific coast mills for a like quantity. In the course of the development of the Procurement Division of the Army, plans were formulated for the extension of the legitimate right of control by the Government of the resources of the country in the emergency and for the prompt and efficient equipment for the military forces. Among the subjects of control was the production in the largest possible quantities of spruce and fir lumber for airplane construction. In the fall of 1917 the Production Division of the Army had been organized and contracts made *327 by it with, a large number of Pacific coast mills, including the mills with which the plaintiff was dealing, for spruce of a more perfect grade than was being produced by the mills for the existing and highly profitable market. The quantity produced of the Army’s grade of spruce was insufficient for its purposes and in the circumstances surrounding the market in general, the prospects being far from satisfactory, it was determined by the authorities to extend the Government control so as to insure a continuous flow in greater quantities of timber for the various uses, and principally in those grades for which the greater need existed. To this end a regulation was enacted permitting the cutting and transporting of lumber other than that meeting the Army’s requirements, as set forth in Specification No. 1, only after inspection and permission by the Spruce Production Division. At the time of the enactment of this regulation there had been delivered by certain of the mills upon plaintiff’s orders a quantity of spruce and fir which, early in February, 1918, was being transported in 301 cars then at various points in the United States. This lumber had been sold by plaintiff under binding contracts to others than the allied governments.
February 11, 1918, Major Leadbetter, the officer in charge of the Spruce Production Division of the War Department, at a conference in his office in Washington with the plaintiff and the purchasing representatives of the allied nations allocated the plaintiff’s 301 cars of lumber to Great Britain, France, and Italy, and by proper order placed the plaintiff in position to effectuate delivery by him of the lumber in transit and under his control to the representatives of the allied governments rather than to the person or persons from whom he had, in the first instance, received the orders and to whom it was his intention and contractual obligation to deliver it. In this transaction plaintiff received only his out-of-pocket expenditures, being the purchase price paid to the mills, the freight charges, insurance, etc., and his additional expenses in effectuating a change of delivery at certain Atlantic ports from the persons to whom he had sold the lumber to the allied representatives, and in securing the return to him of certain of the bills of lading already sent forward.
*328 The plaintiff refunded a portion of the payments received for the lumber from the persons to whom he had sold it. Plaintiff's actual loss on the 301 cars of lumber was $163,247.17. This amount represents the loss to plaintiff of the profits in a definite accomplishment of trade, which profits would have been a mere matter of routine accomplishment but for the action of the defendant’s officers on February 11, 1918, in compelling an entirely different disposition of the lumber.
We are unable to concur in the contention of the defendant that the jurisdictional act merely waives the defense of tort, a malevolent, unauthorized interference by the defendant's officers with plaintiff’s commercial activities; and that inasmuch as no malice has been shown and it appears that the actions complained of were in the exercise of the defendant’s superior authority in an emergency and in the common defense, there was,no tort, and the plaintiff may not therefore recover. In our opinion, the jurisdictional-act intended to go further and to permit the plaintiff to recover any loss resulting from such action of the defendant’s officers as precluded the consummation by him of the delivery of the quantity of timber which he had, received from the mills and had, sold, and was in the act of delivering to his purchasers.
The second item of the present claim in the amount of $195,230.62 concerns the plaintiff’s anticipated profit from an undelivered portion of a quantity of spruce covered by certain of his purchase orders sent to the Astoria Box Company and the Henry G. Davis Lumber Company. These mills were unable to deliver 5,290,363 feet of “G” and “H” list lumber of the grade specified on plaintiff’s orders because of a change in the Government’s specification for spruce and fir lumber for domestic use and the control exercised by the Government over the production of this material by the mills.
The requirement of plaintiff’s orders which had been placed with the American mills prior to February 6, 1918,-was for a grade of spruce not then contracted for by the spruce production division of the Army or used by the Army, and under existing regulations was free- for sale in *329 the open market. In addition, an order of the plaintiff February 4, 1918, for 6,000,000 feet had been approved by the authorities and an export license had been secured for the transportation of the total quantity of the order in British vessels to the plaintiff’s correspondents in England. A portion only of the quantity covered by the unfulfilled orders was in due course delivered by the mills and in turn by plaintiff to his correspondents in respect to the orders received from them.
The plaintiff now contends that he is entitled to recover $195,230.62, representing the profit which he would have received on 5,290,363 feet of lumber had delivery been completed. The basis of this claim is that the officers of the spruce • production division of the War Department directed the cancellation by the mills of his existing contracts and prevented the delivery of this lumber to him. The action of tbe Government officers was the result of increased control exercised by the United States over • the production óf lumber by the entire industry and the output of all the-Pacific coast mills through regulations imposed upon such mills relative to the manner of cutting and the grades of spruce and fir to be produced.
In our opinion the right of recovery under the jurisdictional act does not and was not intended to extend the consequences to plaintiff of the effect of the defendant’s regulations concerning the output of the mills, even although such regulations were directed to the production of a grade of lumber which the Government alone was permitted to purchase. We find nothing in the language of the act to' warrant the conclusion that as to the second item of the claim relative to the undelivered portion of the orders placed with the mills on and prior to February 4, 1918, Congress intended to override the principle announced in Omnia Commercial Co., Inc. v. United States, 261 U. S. 502. The intent of the act was to make it possible for the plaintiff to recover, upon the establishment of the necessary facts, for his actual losses as distinguished from his anticipated profits resulting from the acts of governmental agencies, which constituted, in effect, a commandeering, a requisitioning, a controlling by compulsion or otherwise, or the allocating or directing the contracting for, or delivery *330 of, lumber, but always with regard to “spruce and fir which he owned or had sold under firm and binding contracts.”
The undelivered portion of the quantities of spruce and fir ordered by plaintiff was never “owned” by him nor “sold under firm and binding contracts.” The orders relied upon by plaintiff did not evidence ownership nor sale -under firm and binding contracts. They were at best merely executory contracts subject to cancellation concerning an unidentified quantity of lumber, not then cut and uncertain of delivery. For ownership there must be something in being. For a sale there must be a delivery, the passing of title with the resulting responsibility of payment. An agreement that is subject to a condition precedent does not become a binding contract until the happening of the stipulated contingency, unless the language of the agreements shows a contrary intention. The undelivered portion of the lumber covered by the plaintiff’s orders, constituting the second cause of action, was never produced by the mills, was never loaded on the cars for the plaintiff’s disposition; he had neither made payment to the mills nor received payment from his purchasers covering this quantity of timber. There had been no delivery of title to him under his contract with the mills and he therefore neither “owned” the undelivered portion nor had he any title in connection with which he could have made a completed sale under a “firm and binding contract.” He had merely received his order for the lumber from his correspondents and had placed an order for the same quantity with the mills, but neither set of orders had effected ownership, or a sale under firm and binding contracts, nor could ownership or sale have been effected until delivery f. o. b. shipping point. There is therefore no right of recovery under the jurisdictional act growing out of the unfulfilled portion of the orders in question. Elgee Cotton cases, 22 Wall. 180; Hatch v. Oil Company, 100 U. S. 124; Clarkson v. Stevens, 106 U. S. 505; Pope v. Allis, 115 U. S. 363; Beardsley v. Beardsley, 138 U. S. 262.
The statute directs that interest shall be allowed upon the compensation awarded. The evident purpose of the statute was to compensate the plaintiff in such amount as would produce the full equivalent of that which he would have received at the time, but for the action of the Government officers. *331 See Phelps v. United States, 274 U. S. 341. Judgment will therefore be entered in favor of the plaintiff for $163,247.17, with interest thereon at 6 per cent per annum from February 11, 1918, until paid. It is so ordered.
Whaley, Judge; Williams, Judge; Green, Judge; and Booth, Chief Justice, concur.