Maddest, Judge,
delivered the opinion of the court:
This suit is here by virtue of a special act of Congress, the text of which is quoted later in this opinion. The facts preceding the enactment of the special act were as follows:
The plaintiff made a contract with the Government dated December 3, 1924, to construct a tunnel for the supply of water for the District of Columbia. The work was completed in 1927. The plaintiff claimed- that the Government had in various ways breached the contract and he brought a suit (K-366) in this court, asking for damages in the sum of $306,825.33. The case was tried and the court rendered a judgment for the plaintiff for $45,174.46, accompanied by an opinion which dealt with the issues in the case (76 C. Cls. 64). The plaintiff made several motions for new trials, which were denied. Written opinions accompanied two of the denials (81 C. Cls. 658; 86 C. Cls. 18). The plaintiff petitioned the Supreme Court of the United States for a writ of certiorari to review this court’s decision. The Supreme Court denied the petition (303 U. S. 654). All of the foregoing steps in the litigation were taken under the general legislation conferring jurisdiction on this court, subject to review by the Supreme Court (28 U. S. C. §§ 250, 288). The amount of the judgment rendered by this court in favor of the plaintiff was paid to him.
In 1942 the plaintiff secured the passage of the special act of Congress under which this suit is brought. The text of the act (56 Stat. 1122) is as follows:
An Act
To confer jurisdiction upon the Court of Claims to hear, determine, and render judgment upon the claims of Allen Pope, his heirs or personal representatives, against the United States.
Be it enacted by the Senate and Mouse of Representatives of the United States of America in Congress assembled, That jurisdiction be, and the same is hereby', *378 conferred upon the Court of Claims of the United States, notwithstanding any prior determination, any statute of limitations, release, or prior acceptance of partial allowance, to hear, determine, and render judgment upon the claims of Allen Pope, his heirs, or personal representatives, against the United States, as described and in the manner set out in section 2 hereof, which claims arise out of the construction by him of a tunnel for the second high service of the water supply in the District of Columbia.
Sec. 2. The Court of Claims is hereby directed to determine and render judgment at contract rates upon the claims of the said Allen Pope, his heirs or personal representatives, for certain work performed for which he has not been paid, but of which the Government has received the use and benefit; namely, for the excavation and concrete work found by the court to have been performed by the said Pope in complying with certain orders of the contracting officer, whereby the plans for the work were so changed as to lower the upper “B” or “pay” line three inches, and as to omit the timber lagging from the side walls of the tunnel; and for the work of excavating materials which caved in over the tunnel arch and for filling such caved-in spaces with dry packing and grout, as directed by the contracting officer, the amount of dry packing to be determined by the liquid method as described by the court and based on the volume of grout actually used, and the amount of grout to be as determined by the court’s previous findings based on the number of bags of cement used in the grout actually pumped into the dry packing.
Sec. 3. Any suit brought under the provisions of this Act shall be instituted within one year from the date of the approval hereof, and the court shall consider as evidence in such suit any or all evidence heretofore taken by either party in the case of Allen Pope against the Ünited States, numbered K-366, in the Court of Claims, together with any additional evidence which may be taken.
Sec. 4. From any decision or judgment rendered in any suit presented under the authority of this Act, a writ of certiorari to the Supreme Court of the United States may be applied for by either party thereto, as is provided by law in other cases.
Approved, February 27, 1942.
It is apparent that the suit which is now before us has already been litigated to a final judgment in this court, un *379 der the court’s general jurisdiction, and the right to seek a review of the judgment in the Supreme Court, which is also granted by a statute of general application, has already been exercised and the review denied. The plaintiff seeks to justify his attempt to obtain a second and more favorable judgment from a court which has already heard, determined, and rendered final judgment in the same litigation, by pointing to the special act.
The history recited above presents a problem as to the power of Congress, under the Constitution, to do what the special act attempts to do. The text of the special act is quoted above. A rereading of Section 2 of the act will show that the task which the court is directed to perform is a small and unimportant one. It is directed to refer to its previous findings, take certain cubic measurements and certain numbers of bags of cement which are recited there by reference, multiply those figures by the several unit prices stipulated in the contract for the several kinds of work, add the results, and render judgment for the plaintiff for the sum. If this reading of Section 2 is correct, not only does the special act purport to confer upon the plaintiff the unusual privilege of litigating the same case a second time in a court which once finally decided it, and applying a second time for a review in the Supreme Court of the United States, which once considered and denied such a review. The special act also purports to decide the questions of law which were in the case upon its former trial and would, but for the act, be in it now, and to decide all questions of fact except certain simple computations. Thus a second serious question as to the Constitutional power of Congress is presented.
The Government urges that we avoid the constitutional issue by construing the act to mean only that a new trial is granted to the plaintiff by the act, in which new trial the court will be free to decide, in the usual manner of a court, the questions of law and fact involved in the case. Counsel for the plaintiff, though in their original brief they said, as to one item of the claim “The Act appears mandatory that such cost be now allowed,” and expressed, though less peremptorily, a similar view as to other items, seemed to take the position at the oral argument and in their final brief that *380 the court could, under the act, exercise a considerable power of decision if it would take jurisdiction of the case.'
While we recognize that a court should make every proper effort to give to a statute a construction which keeps it clear of serious constitutional questions, we are unable to so construe the special act. We think that the language of Section 2 is plain, and is, as the plaintiff originally contended, mandatory as to how the case must be decided if the court undertakes the'jurisdiction which the act purports to confer. We are not willing to distort the plain meaning of language, for the purpose of evading a troublesome question. We therefore undertake the question as to whether Congress can effectively direct this court to again decide this case, which it has once finally decided under its general jurisdiction, and to decide it for the plaintiff, and give him a judgment for an amount which simple computation based upon data referred to in the special act, will produce.
We refer first to United States v. Klein, 13 Wall. 128. Under a general statute of 1863 and Presidential proclamations issued pursuant thereto, Klein, by virtue of his oath of allegiance and a resulting Presidential pardon, was entitled to sue in this court for property captured by the Union Army during the Civil War. He did so sue and recovered a judgment. The Government appealed the case to the Supreme Court. While the appeal was pending, Congress in 1870 passed an act providing that no pardon should be admissible to establish any claim against the United States, and that when any pardon had been granted to a person suing under the act of 1863, which pardon recited that the recipient “took part in the late rebellion” and which pardon had been accepted in writing without express disclaimer, by the recipient, of guilt, the pardon should be conclusive evidence “that such person did take part in * * * the late rebellion” and upon proof of the pardon and the acceptance of it the jurisdiction of the court should cease and the court should forthwith dismiss the suit.
The Government urged that the Supreme Court should dismiss the suit. Instead, that court affirmed the judgment of this court and held the 1870 Statute unconstitutional. The opinion, delivered by Chief Justice Chase, said:
*381 It is evident from this statement that the denial of jurisdiction to this court, as well as to the Court of Claims, is founded solely on the application of a rule of decision, in causes pending, prescribed by Congress. The court has jurisdiction of the cause to a given point; but when it ascertains that a certain state of things exists, its jurisdiction is to cease and it is required to dismiss the cause for want of jurisdiction.
It seems to us that this is not an exercise of the.acknowledged power of Congress to make exceptions and prescribe regulations to the appellate power.
The court is required to ascertain the existence of certain facts and thereupon to declare that its jurisdiction on appeal has ceased, by dismissing the bill. What is this but to prescribe a rule for the decision of a cause in a particular way? In the case before us, the Court of Claims has rendered judgment for the claimant and an appeal has been taken to this court. We are directed to dismiss the appeal, if we find that the judgment must be affirmed, because of a pardon granted to the intestate of the claimants. Can we do so without allowing one party to the controversy to decide it in its own favor? Can we do so without allowing that the legislature may prescribe rules of decision to the Judicial Department of the government in cases pending before it?
We think not; * * *
The Chief Justice also said:
We must think that Congress has inadvertently passed the limit which separates the legislative from the judicial power.
It is of vital importance that these powers be kept distinct. The constitution provides that the judicial power of the United States shall be vested in one Supreme Court and such inferior courts as the Congress shall from time to time ordain and establish. The same instrument, in the last clause of the same article, provides that in all cases other than those of original jurisdiction, “the Supreme Court shall have appellate jurisdiction both as to law and fact, with such exceptions and under such regulations as the Congress shall make.”
Congress has already provided that the Supreme Court shall have jurisdiction of the judgments of the Court of Claims on appeal. Can it prescribe a rule in conformity with which the court must deny to itself the jurisdiction thus conferred, because and only because its decision, in accordance with settled law, must be adverse *382 to the government and favorable to the suitor? This question seems to us to answer itself.
We think that the Supreme Court’s decision in the Klein case is applicable to and decisive of the question before us. The fact that in the Klein case the statute attempted to take away a right of recovery from the person who was suing the Government, while in our case the statute attempts to confer a right of recovery upon such a person, must be immaterial. The ground of decision in the Klein case was the attempted encroaclnnent, by one of the three independent branches of the Government, upon another; the effort of Congress to decide a law suit while it was pending in a court. The fact that in the Klein case the statute was enacted while the case was still pending on appeal in the Supreme Court, while in the instant case the statute was enacted some years after the case had been finally adjudicated, cannot be a basis of distinguishing the cases. Everything which the Supreme Court said in the Klein case, in which the suit was a pending one, could be applied with even greater emphasis to a legislative direction to a court which has already heard and decided a case, to hear it again and decide it differently.
While counsel for the plaintiff have not seriously urged that the doctrine laid down in the case of Williams v. United States, 289 U. S. 553, has any important bearing upon the question here presented, we neverthless give brief attention to that question. In that case the Supreme Court held that this court was a legislative court, not created under the provisions of Article III of the Constitution of the United States, and that therefore the salaries of its judges could be reduced during their tenures of office. The Supreme Court said (p. 561):
It is a court of great importance, dealing with claims against the United States, which, in the aggregate, amount to a vast sum every year. The questions which it considers call for the exercise of a high order of intelligence, learning and ability. The preservation of its independence is a matter of public concern. The sole function of the court being to decide between, the government and private suitors, a condition, on the part of the judges, of entire dependence upon the legislative pleasure for the tenure of their offices and for a con *383 tinuance of adequate compensation during their service in office, to say the least, is not desirable.
But these considerations, though obvious enough, are not sufficient, standing alone, to support a conclusion that the Court of Claims comes within the reach of the judicial article in respect of tenure of office and compensation. The integrity of such a conclusion must rest not upon its desirability, but upon its conformity with the provisions of the Constitution.
We do not attempt to explain the decision in the Williams case, because, and we say it with deference, we do not pretend to understand it.[1] In any event, the language of the Supreme Court in the 'Williams case, and the fact that that language was uttered in the course of the decision of a case certified to the Supreme Court by this court, would seem to leave no room for doubt that this court is a court, in fact as well as in name, and that its decisions are judicial decisions. If it were not, the Supreme Court would not review its decisions,[2] as it does, and has done since the amendment, in 1866, 14 Stat. 9, of the statute defining the jurisdiction and powers of this court. United States v. Jones, 119 U. S. 477. And we would suppose, unless the decision in the Williams case means the contrary, that we are no more acting as a mere agent or arm of the legislature, when we decide our cases in the first instance, than is the Supreme Court, when it, under the appellate procedure prescribed in the statute,[3] decides them finally. Each court is assigned its place in the process of doing justice between the United States and those who have claims against it. That is the major portion of this court’s assignment. It is only a small part of the Supreme Court’s assignment. But one, when it is performing that assignment must be acting judicially, if the other is.
The special act here in question provides, in Section 4, that from this court’s decision, a writ of certiorari may be *384 applied for in the Supreme Court, as in other cases. But if the Congressional mandate of Section 2, which directs this court how to decide the case, is valid, and is followed by this court, it would equally, it would seem, be binding upon the Supreme Court. There would be little chance of error, since only mathematical computation is left to the court, hence the provision for certiorari in Section 4 is perhaps not important.
Perhaps we have discussed the question presented by this case as if it were a dry question of constitutional theory. It is not. It is a question of whether this court, which has for some eighty years been entrusted with the responsible and dignified function of doing justice between the United States and those who bring suit against it, is going to be permitted to perform that function with the independence and single-mindedness to justice which the task deserves. It is a question of whether the judges of this court may continue to decide their cases as their consciences, and such acumen as they have, may lead them to decide, with the-confidence that their decisions will be reviewed in the traditional judicial way, with both sides of the controversy presented to the reviewing, tribunal; or must, on the other hand, feel that they must weigh in the scales the ability, energy, and persistence of the parties to the suit and their counsel, since they may, in a naturally completely partisan effort, obtain a hearing before a committee of Congress, at which hearing the other side of the controversy is not presented, and secure legislation setting aside the judgment of the court and directing the court to put its indorsement upon the judgment of members of another branch of the Government.
This court is, of course, as prone to error as any other. Its decisions are, as are those of other courts, sometimes erroneous, and sometimes unjust. A litigant in any court is subject to such a hazard. But the unusual procedure followed in this case is still more hazardous, as may be shown by considering just one of the items of plaintiff’s claim. Item 2 of his claim, as summarized in paragraph VI of his petition is for
2. Excavation of materials which caved in over the tunnel arch, 4,781 cubic yards at $17.00_ $81, 277. 00
*385 By section 2 of tbe special act, tbis court is, in effect, directed to render a judgment for that amount. Yet we venture to say that no court, left free to decide the' question according to law and justice would decide that the plaintiff should recover one dollar upon that claim. The relevant facts are that, in the process of excavating the tunnel, large amounts of earth and rocks caved in from the roof of the tunnel. These cave-ins occurred through no effort of the plaintiff, and, he claims, in spite of his efforts to prevent them. On the former trial of the case in this court, the plaintiff himself testified that:
The specifications described the B line as being the outside limiting line for which payment for excavation will be made. If any excavation is made outside that line, either by mistake or by the ground caving in, no ■ payment is made beyond that line. That line is the limiting line for pay.
He further testified that the Government’s contracting officer had said he “hoped to find some other method of filling that space over the rock section that would be less expensive than filling it with dry pack and grout” but that plaintiff protested against this because:
The manner provided in the contract for reimbursing me for hauling out of the tunnel whatever rock or earth fell into it was covered in the compensation allowed me for dry packing and grout.
He further testified, with reference to a ruling (later rescinded) by the contracting officer that no grout should be put in the dry packing in the rock sections, that he complained to the contracting officer that such a ruling would cause him loss because, he testified,
All this preparatory work that I had done would not be paid for; that is, I was paid for no excavation that fell down above the “B” line, all this earth that fell down I was not paid for it under the item of excavation. The only way I would get paid for removing that earth that fell down was when I refilled it with dry packing and grout and my price for grout included the cost of removing that earth from the tunnel.
On his cross-examination the questions and answers relating to the same matter were as follows:
*386 625. X Q. You said in your testimony that the only way for you to get paid for the earth which you took out, the excess earth above the B line, was to grout with stones.
A. Yes, sir.
627. X Q. And you were being paid $3 a bag for cement used in grouting and that cement cost you 80 cents, didn’t it ?
A. The cement alone cost that, but there were other materials. The cement was only a guide, a measure. There was the sand and there was labor, and equipment to put it in, and besides that, that was computed to pay for the cost of the earth, removing the earth that fell in.
628. XQ. Certainly; so that you expected to make enough profit out of the grouting to pay for the falling of the earth; isn’t that what you said ?
A. No, sir; I expected to be paid. I expected payment for the grout would pay for the earth that fell in, removing the earth.
629. X Q. It would pay ?
A. Yes.
630. X Q. In other words, the grout pay would pay you for the labor of removing the excess earth; isn’t that what you mean ?
A. That is exactly what I have been trying to show for five years.
Plaintiff now presents to the court a congressional direction to give him, in addition to pay for all the dry packing and grouting which he claims he did, and which, as measured would fill the space left vacant by the earth and rocks that fell into the tunnel, more than $80,000, one-half of the whole amount which the court is directed to pay him, for work for which, by his own construction of the contract, he was entitled to no pay at all, except the pay for dry packing and grouting.
We think that, in a judicial proceeding with both sides represented, a plaintiff would hardly ever recover a judgment for $80,000 upon a claim which had no basis whatever. And we think we should not be directed to indorse that kind of a judgment, arrived at by members of another' branch of the Government. Each branch of the Government will, inevitably, make mistakes, but each should take, and keep, the responsibility for the mistakes it makes.
*387 Under the decision of the Supreme Court in the Williams ■ case, supra, the tenures and salaries of the Judges of this court are at the will of Congress. We would be much less than worthy of the trust which has been reposed in this court since the year 1863 [4] if we should also subject our decisions to the will of Congress.
In the view which we have taken of Section 2 of the special act, it is not necessary for us to decide, and we do not decide, whether an act which merely granted a new trial, without directing the court how to decide the case upon the new trial, would or would not be an infringement upon the judicial powers of the court.[5] In the case of Pocono Pines Assembly Hotels Co. v. United States, 73 C. Cls. 447, all members of the court were of the opinion that such an act would be unconstitutional if its effect was to deprive a claimant against the United States of a judgment which he had recovered, though they differed in their views as to whether the act there in question did grant a new trial. We think that an act directing the court to re-try the issues of a case, which issues were or should have been tried, the first time would, regardless of whether the Government or the plaintiff sought the new trial, be no less dangerous to the independence of the court as a judicial body, than a direction to the court as to how it must decide a pending or previously adjudicated case. It likewise would require the court, when it was first deciding the case, to keep its mind, not solely on the law and the facts of the case, but also on the question of how its decision would look to the members of another branch of the Government, *388 when presented to them in partisan fashion without the safeguards which accompany judicial review.
What we have said is said with the complete respect which is properly due the legislative branch of the Government. We have no feeling that there is involved in this case any intentional effort to infringe upon the proper exercise by this court of its assigned duties in our scheme of government. The Congress has its problems, difficult and pressing. From the very nature of our work, we have opportunities for deliberate consideration of particular cases, which, as we understand, Congress has not. We desire only to be permitted to act as a court.
It follows from what we have said that the plaintiff’s petition must be dismissed.
It is so ordered.
Whitaker, Judge; and Whaley, Chief Justice, concur.

 Compare U. S. v. Klein, 13 Wall 128, 144-145 ; U. S. v. Union Pacific R. R. 98 U. S. 569, 603; Miles v. Graham, 268 U. S. 501. But see Ex parte Bakelite Corporation, 279 U. S. 438.

 Hayburn’s Case, 2 Dall. 409 ; Gordon v. U. S., 117 U. S. 697 (see tile opinion of Chief Justice Taney in Gordon’s case, printed in 117 U. S. 697) ; B. and O. R. R. v. Interstate Commerce Commission, 215 U. S. 216.

 43 Stat. 939, 28 U. S. C. § 288.

 Act of March 3, 1863; 12 Stat. 765. President Lincoln in a message to Congress on December 3, 1861, said:
“It is important that some more convenient means should be provided, if possible, for the adjustment of claims against the Government, especially in view of their increased number by reason of the war. It is as much the duty of Government to render prompt justice against itself in favor of its citizens as it is to administer the same between private individuals. The investigation and adjudication of claims in their nature belong to the judicial department, Besides, it is apparent that the attention of Congress will be more than usually engaged for some time to come with great national questions. It was intended by the organization of the Court of Claims mainly to remove this branch of business from the halls of Congress; but while the court has proved to be an effective and valuable means of investigation, it in great degree fails to effect the object of its creation for want of power to make its judgments final.”
The act of 1863 referred to at the beginning of this note was the result of this message.

 See Cherokee Indians v. United States, 270 U. S. 476, 486.