903 F.2d 1560
 58 USLW 2748, 36 Cont.Cas.Fed. (CCH) 75,900
 SEABOARD LUMBER COMPANY, W.T. Burgess Logging Co., Inc., Big
Flat Timber Company, Manke Lumber Company, Merrill & Ring,
Inc., Tomco, Inc., Alpine Veneers, Inc., Penn Timber, Inc.,
Times Mirror Land & Timber Company, Taylor Westbrook,
Brazier Forest Products, Inc., Gateway Lumber Company, Mt.
Adams Veneer Co. and Capital Development Company,
Plaintiffs-Appellants,
v.
The UNITED STATES, Defendant-Appellee.
 No. 88-1486.
 United States Court of Appeals,
Federal Circuit.
 May 17, 1990.
Rehearing Denied Sept. 11, 1990.
 
 William F. Lenihan, Schwabe, Williamson, Wyatt & Lenihan, Seattle, Wash., for plaintiffs-appellants. With him on the brief was Mildred J. Carmack, Schwabe, Williamson, Wyatt & Lenihan, Portland, Or. Also on the brief were Jan D. Sokol, Stafford, Frey, Cooper & Stewart, Portland, Or., Richard A. Smith, Harland & Gromala, Eureka, Cal., Wesley R. Higbie, Hendrickson, Higbie & Cole, San Francisco, Cal., and John P. Bledsoe, Spears, Lubersky, Campbell, Bledsoe, Anderson & Young, Portland, Or.
 Paul D. Langer, Attorney, Commercial Litigation Branch, Department of Justice, Washington, D.C., for defendant-appellee. With him on the brief were John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director and John W. Showalter, Asst. Director. Also on the brief was William P. McGinnies, Attorney, Office of Gen. Counsel, Dept. of Agriculture, Washington, D.C., of counsel.
 Before NIES and BISSELL*, Circuit Judges, and BALDWIN, Senior Circuit Judge.
 NIES, Circuit Judge.
 
 
 1
 This appeal is from a certified interlocutory order of the United States Claims Court denying appellants' motion to dismiss the government's counterclaims for breach by the contractors of particular government contracts. Our jurisdiction rests on 28 U.S.C. Sec. 1292(d)(2) (1988). Appellants urged dismissal of the government's counterclaims on the grounds that the appellants have a right to defend against the government's claims in an Article III court. Appellants also assert a right to a jury trial. The Claims Court rejected these constitutional arguments. See Seaboard Lumber Co. v. United States, 15 Cl.Ct. 366 (1988) (Smith, C.J.). We affirm on narrower grounds.
 
 BACKGROUND
 
 2
 Appellants are timber companies that individually contracted with the United States to purchase timber from National Forests. With respect to each contract, the government asserted its breach claim against the contractor by means of an appropriate contracting officer's decision. In each case, the contracting officer issued a decision that the contractor failed to cut, remove and pay for timber as required by the contract and assessed a specific dollar amount of damages in each instance. See 41 U.S.C. Sec. 605(a) (1982).
 
 
 3
 Each timber purchasing contract, as originally executed or later amended,[1] contained a standard disputes clause which provides in pertinent part:
 
 
 4
 C9.2 (disputes).
 
 
 5
 (a) This contract is subject to the Contract Disputes Act of 1978 (Pub.L. 95-563).(b) Except as provided in the Act, all disputes arising under or relating to this contract shall be resolved in accordance with this provision.
 
 
 6
 ....
 
 
 7
 (c)iii .... A claim by the government against the contractor shall be subject to a decision by the contracting officer.
 
 
 8
 ....
 
 
 9
 (f) The contracting officer's decision shall be final unless the contractor appeals or files a suit as provided in the Act.
 
 
 10
 By the Contract Disputes Act, 41 U.S.C. Secs. 601-613 (1982 & Supp. V 1987), Congress mandated that these provisions be included in government contracts generally. See 41 U.S.C. Sec. 602 (1982).
 
 
 11
 Under the above clause, once the decision of the contracting officer becomes final on a government claim against the contractor, the merits of that decision cannot be judicially challenged. To prevent that preclusive effect, the contractor has two options under the contract provisions which incorporate the CDA. The contractor may either appeal within 90 days to the appropriate Board of Contract Appeals as provided in 41 U.S.C. Sec. 606 (1982) or within twelve months file a direct access suit in the United States Claims Court, an Article I court, under 41 U.S.C. Sec. 609(a)(3) (1982). In these proceedings, the facts, as well as the law, are decided de novo by the board or the court. See id.; 41 U.S.C. Sec. 605(a); Assurance Co. v. United States, 813 F.2d 1202, 1206 (Fed.Cir.1987). At the time the CDA became effective, and at the time all but four of the contracts at issue were executed, a direct access suit would have been filed in the United States Court of Claims, an Article III court.[2] That was changed, effective October 1, 1982, by the Federal Courts Improvement Act of 1982 (FCIA), Pub.L. No. 97-164, 96 Stat. 25, which placed jurisdiction over direct access suits in a new Article I court, the United States Claims Court. FCIA also provided that an appeal from either the appropriate Board of Contract Appeals or from the United States Claims Court may only be taken to the United States Court of Appeals for the Federal Circuit, an Article III court. The jurisdiction over such appeals is exclusive. 28 U.S.C. Secs. 1295(a)(3), (10) (1988).
 
 
 12
 Each appellant filed suit in the Claims Court seeking review of the contracting officer's decision in favor of the government as provided in 41 U.S.C. Sec. 609(a).[3] Had they failed to seek review, the contracting officer's decisions under the contracts (and CDA) would have become final and could not thereafter be judicially challenged on the merits.[4] In each suit, the government filed a counterclaim asserting the breach of contract claim which was the subject of the contracting officer's decision. Thus, the government's breach of contract claim underlies both the complaint and the counterclaim. Each appellant then filed a motion to dismiss the government's counterclaim urging that adjudication of the counterclaim must occur in an Article III court and that, under the Seventh Amendment, the contractor was entitled to a jury trial.[5]
 
 
 13
 Appellants' suits were consolidated in the Claims Court for consideration of the constitutional issues. In denying the appellants' motion to dismiss the government's counterclaims, the Claims Court held that: (1) a government contract claim was not an action at common law and therefore did not require resolution by an Article III court, Seaboard, 15 Cl.Ct. at 369-72; (2) such claim fell within the "public rights" exception to Article III and Congress could thus constitutionally provide for adjudication by a non-Article III tribunal, id., at 372-74; and (3) the Seventh Amendment did not entitle the contractors to a jury trial of the government's claims, id. at 374-75. The Claims Court dealt summarily with the government's alternative defense that the contractors had waived the asserted rights, if any existed. Recognizing that controlling questions of law were at issue, the questions of appellants' right to trial in an Article III court and right to jury trial, the Claims Court certified the interlocutory order for immediate appeal pursuant to 28 U.S.C. Sec. 1292(d)(2). This court granted appellants permission to appeal.
 
 ISSUE
 
 14
 Whether the CDA, as originally enacted or as amended by FCIA, unconstitutionally deprives appellants of either a right to an Article III court or a jury trial on the government counterclaims for breach of contract?
 
 OPINION
 The Seventh Amendment provides:
 
 15
 In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.
 
 
 16
 Seaboard and all other contractors (hereinafter Seaboard) assert that the government's breach of contract claim should be deemed comparable to a private contract claim which, historically must be litigated in an Article III court with a right to a jury. In support of this analogy, it asserts that prior to the CDA, the government had to litigate a breach claim against a contractor in an Article III court (although it cites no authority for this proposition). It maintains further that waiver of sovereign immunity and the authority of an Article I court to adjudicate claims against the government are not involved here. These premises lead Seaboard to its ultimate conclusion that the CDA's review procedures are unconstitutional. We disagree. The premises of Seaboard's syllogism are fatally flawed in a number of respects.
 
 
 17
 * Seaboard correctly states that the Seventh Amendment preserves a right to a jury trial on issues of fact in suits for breach of contract damages between private party litigants, see Northern Pipeline Constr. Co. v. Marathon Pipe Line, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), but Seaboard fails to carry its analogy through to its logical conclusion. The Supreme Court has long recognized that a private litigant may waive its right to a jury and to an Article III court in civil cases. Waiver can be either express or implied. Commodity Futures Trade Comm. v. Schor, 478 U.S. 833, 848, 106 S.Ct. 3245, 3255, 92 L.Ed.2d 675 (1986); cf. D.H. Overmyer Co. v. Frick Co., 405 U.S. 174, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972) (contractual waiver of due process rights). Waiver requires only that the party waiving such right do so "voluntarily" and "knowingly" based on the facts of the case. Brookhart v. Janis, 384 U.S. 1, 4, 5, 86 S.Ct. 1245, 1246, 1247, 16 L.Ed.2d 314 (1966); cf. D.H. Overmyer, 405 U.S. at 185-86, 92 S.Ct. at 782. The acceptance of contract provisions providing for dispute resolution in a forum where there is no entitlement to a jury trial may satisfy the "voluntary" and "knowing" standard. See, e.g., Northwest Airlines, Inc. v. Air Line Pilots Ass'n Int'l, 373 F.2d 136, 142 (8th Cir.) cert. denied, 389 U.S. 827, 88 S.Ct. 77, 19 L.Ed.2d 83 (1967); Maryland Casualty Co. v. United States, 135 Ct.Cl. 428, 438, 141 F.Supp. 900 (Ct.Cl.1956) (Jones, C.J., concurring).
 
 
 18
 Contrary to Seaboard's view, Congress has not taken away the contractor's right to have the government establish its breach claim in an Article III court before a jury. By contractual agreement, the government had regularly provided (until curbed by Congress) that the decision of a contracting officer was final and not subject to review in any judicial forum. United States v. Moorman, 338 U.S. 457, 70 S.Ct. 288, 94 L.Ed. 256 (1950) (and cases cited therein). Moreover, these contractual provisions denying judicial review were specifically upheld by the Supreme Court, except for fraud on the government's part. Wunderlich v. United States, 342 U.S. 98, 99, 72 S.Ct. 154, 155, 96 L.Ed. 113 (1951); United States v. Holpuch Co., 328 U.S. 234, 66 S.Ct. 1000, 90 L.Ed. 1192 (1945) (contractor's failure to appeal per dispute resolution process in contract precluded suit in Court of Claims); United States v. Blair, 321 U.S. 730, 64 S.Ct. 820, 88 L.Ed. 1039 (1944) (same effect). Government contractors long have been held to be bound by a provision vesting dispute resolution in a nonjury/non-Article III forum. United States v. Moorman, 338 U.S. at 460-62, 70 S.Ct. at 290-91. In Wunderlich, the Supreme Court upheld the enforceability of the "finality clause" of a standard form government contract which provided that disputes between the parties "shall be decided by the contracting officer with a right of appeal to the head of the department 'whose decision shall be final and conclusive upon the parties thereto.' " As stated in Wunderlich, 342 U.S. at 99-100, 72 S.Ct. at 155:
 
 
 19
 The same Article 15[6] of a government contract was before this Court recently, and we held, after a review of the authorities, that such Article was valid. United States v. Moorman, 338 U.S. 457 [70 S.Ct. 288, 94 L.Ed. 256 (1950) ]. Nor was the Moorman case one of first impression. Contracts, both governmental and private, have been before this Court in several cases in which provisions equivalent to Article 15 have been approved and enforced "in the absence of fraud or such gross mistake as would necessarily imply bad faith, or a failure to exercise an honest judgment...." Kihlberg v. United States, 97 U.S. 398, 402 [24 L.Ed. 1106 (1878) ]; Sweeney v. United States, 109 U.S. 618, 620 [3 S.Ct. 344, 344, 27 L.Ed. 1053 (1883) ]; Martinsburg & P.R. Co. v. March, 114 U.S. 549, 553 [5 S.Ct. 1035, 1037, 29 L.Ed. 255 (1885) ]; Chicago S.F. & C.R. Co. v. Price, 138 U.S. 185, 195 [11 S.Ct. 290, 293, 34 L.Ed. 917 (1891) ].
 
 
 20
 Thus, voluntary waiver of both Article III and Seventh Amendment rights, as a matter of both private or government contract law, suffers from no inherent constitutional or legal infirmity. Contrary to Seaboard's premise, by the permissible terms in its contracts, the government did not have to litigate the merits of such claim against a contractor, either as to entitlement or amount, in an Article III court before a jury.[7]
 
 
 21
 Seaboard argues that any waiver was not "voluntary" because government contracts are inherently adhesion contracts, and cites to precedent invalidating contractual provisions where the provision for a waiver resulted from the unfair bargaining positions between the parties.[8] The bare fact that the contracts in question are "take it or leave it" offers by the government is not controlling on the dispute resolution provision's validity, as we read the precedent. The Supreme Court in Wunderlich, 42 U.S. at 100, 72 S.Ct. at 156, addressed the nature of the government-contractor relationship:
 
 
 22
 Respondents were not compelled or coerced into making the contract [with the government]. It was a voluntary undertaking on their part. As competent parties they have contracted for the settlement of disputes in an arbitral manner. This, we have said in Moorman, Congress has left them free to do. United States v. Moorman, supra, 338 U.S. at 462 [70 S.Ct. at 291.] The limitation upon this arbitral process is fraud, placed there by this Court.
 
 
 23
 With respect to the voluntariness of agreeing to the dispute resolution provision in this contract, Wunderlich is controlling.
 
 
 24
 After the Wunderlich decision, Congress, as a matter of grace, provided for narrow judicial review of a contracting officer's decision, limiting by statute (the Wunderlich Act) the contractual options previously available to the government. See 41 U.S.C. Secs. 321, 322 (1982); S & E Contractors, Inc. v. United States, 406 U.S. 1, 13-15, 92 S.Ct. 1411, 1418-19, 31 L.Ed.2d 658 (1972). However, absent a contractor's invoking the allowed procedures, a contracting officer's decision became the final adjudication of the government's claim by reason of the disputes clause in the contract. Crown Coat Front Co. v. United States, 386 U.S. 503, 512-14, 87 S.Ct. 1177, 1182-83, 18 L.Ed.2d 256 (1967).
 
 
 25
 The CDA, which followed the Wunderlich Act, further restricted the government's options on dispute resolution. Congress mandated that the government had to include in its contracts the broader review provisions set out in the CDA, that is, the dual avenues of review either by appeal to a Board of Contract Appeals or by a direct access suit in the Court of Claims. However, Congress confirmed the use of a finality clause in the contract with respect to a contracting officer's decision in favor of the government, absent the contractor's resort to these review procedures. See 41 U.S.C. Sec. 605. Otherwise, the government is not required to litigate the merits of its breach claim.
 
 
 26
 As in Moorman and Wunderlich, Seaboard agreed to the contract provisions spelling out the specific procedures for dispute resolution, none of which entail a jury trial in an Article III court. The effect of such agreement is that at least Seaboard prima facie voluntarily and knowingly waived any right to dispute resolution except in accordance with the contract.[9]
 
 
 27
 Finally, Seaboard asserts that the contractors who entered contracts prior to the FCIA cannot be held to have waived trial level adjudication by Article III judges. As indicated, FCIA amended the CDA so that direct access suits could no longer be brought in the Article III Court of Claims but would be brought in the Article I Claims Court with appeal to this Article III court. However, under the prior procedure, a trial commissioner was statutorily authorized to conduct the trial and to file a report of factual findings. See 28 U.S.C. Sec. 2503 (1976). The Article III judges of the Court of Claims reviewed reported findings for error under a "presumption of correctness" standard. See Montgomery Coca-Cola Bottling Co. v. United States, 222 Ct.Cl. 356, 615 F.2d 1318, 1322-23 (Ct.Cl.1980). Thus, the split of trial and review functions under both systems is substantially similar. Moreover, the disputes clause of the subject contracts referenced the CDA, not specific procedures. In such circumstances, where a contract incorporates procedures under a statute, an expectation that the statute will remain unchanged would not be reasonable. Congress, having enacted the CDA procedures, clearly had the power to change them. By referencing the CDA procedures generally, the parties can be held to the CDA procedures in effect at the time the dispute arises. See Pension Benefit Guarantee Corp. v. R.A. Gray & Co., 467 U.S. 717, 729-30, 104 S.Ct. 2709, 2717-18, 81 L.Ed.2d 601 (1984) (quoting Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 15-16, 96 S.Ct. 2882, 2892-93, 49 L.Ed.2d 752 (1976)); California v. Southland Realty Co., 436 U.S. 519, 528-29, 98 S.Ct. 1955, 1960, 56 L.Ed.2d 505 (1977); Norman v. Baltimore & Ohio R.R., 294 U.S. 240, 306-11, 55 S.Ct. 407, 415-17, 79 L.Ed. 885 (1935); Louisville & Nashville R.R. v. Mottley, 219 U.S. 467, 482, 31 S.Ct. 265, 270, 55 L.Ed. 297 (1911); Opdyke Inv. Co. v. City of Detroit, 883 F.2d 1265, 1275 (6th Cir.1989); Fisch v. General Motors Corp., 169 F.2d 266, 270-71 (6th Cir.1948). In view of these circumstances, we conclude that Seaboard has demonstrated no change so material or drastic with respect to fact-finding by Article III judges that the revised system cannot be deemed reasonably within the scope of the subject waiver.
 
 II
 
 28
 Another fallacy of Seaboard's position is that its challenge to the government's claim before the Claims Court does not implicate sovereign immunity, and therefore Congress' power to place litigation involving the sovereign in an Article I court cannot be relied on in these cases. Since the venerable case of Murray's Lessee v. Hoboken Land and Improvement Co., 59 U.S. (18 How.) 272, 15 L.Ed. 372 (1855), it has been established that the authorization by Congress of a suit to challenge a government claim against the plaintiff can be brought only because of the consent of the sovereign. In Murray's Lessee, Congress enacted a statute which permitted the Treasury Department to audit and assess customs officials' accounts, to issue a warrant of indebtedness for any delinquency, and to levy against that delinquency. Thereafter the customs collector was allowed to contest the determination of indebtedness in district court. In upholding the constitutionality of these procedures, the Supreme Court expressly noted that they implicated sovereign immunity, stating:
 
 
 29
 When ... after the levy of the distress warrant has been begun, the collector may bring before a district court the question, whether he is indebted as recited in the warrant, it simply waives a privilege which belongs to the government, and consents to make the legality of its future proceedings dependent on the judgment of the court; .... The United States consents that this fact of indebtedness may be drawn in question by a suit against them.
 
 
 30
 Murray's Lessee, 59 U.S. (18 How.) at 284. Similarly, the complaints in this appeal are pursuant to a structural system set up by the CDA, which is dependent on waiver of sovereign immunity. Indeed, the CDA review procedures attacked here provide a more expansive waiver than the prior procedures provided in the Wunderlich Act. It is not disputed that the government may condition its consent to suit upon a plaintiff suing only in an Article I court, on waiving a jury trial, or on other conditions including provision for counterclaims to be asserted by the government. See United States v. Mitchell, 463 U.S. 206, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) (Tucker Act, 28 U.S.C. Sec. 1491, constitutes waiver of sovereign immunity, conditioned on conferring jurisdiction in Claims Court, an Article I tribunal); Lehman v. Nakshian, 453 U.S. 156, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981) (Age Discrimination in Employment Act, 29 U.S.C. Sec. 633a, constitutes waiver of sovereign immunity conditioned on relinquishing right to jury trial); Library of Congress v. Shaw, 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986) (Title VII of the Civil Rights Act, 42 U.S.C. Sec. 2000e-5(k), waives sovereign immunity conditioned on no recovery of interest); Kosak v. United States, 465 U.S. 848, 104 S.Ct. 1519, 79 L.Ed.2d 860 (1984) (Federal Tort Claims Act, 28 U.S.C. Secs. 2680(a)-(f), (h)-(n), conditions waiver of sovereign immunity on thirteen exceptions; Sec. 2680(c) precludes suit alleging that customs officials injured property that had been detained by the Customs Service).
 
 
 31
 It has also long been the law that an Article I court without a jury may adjudicate fact issues related to a counterclaim by the government against the plaintiff. In McElrath v. United States, 102 U.S. 426, 440, 26 L.Ed. 189 (1880), the Supreme Court held that counterclaims by the government in a suit brought in the Court of Claims (then deemed to be an Article I court) is not controlled by the Seventh Amendment due to conditions placed on the waiver of sovereign immunity:
 
 
 32
 The government cannot be sued, except with its own consent. It can declare in what court it may be sued, and prescribe the forms of pleading and the rules of practice to be observed in such suits. It may restrict the jurisdiction of the court to a consideration of only certain classes of claims against the United States. Congress, by the act in question, informs the claimant that if he avails himself of the privilege of suing the government in the special court organized for that purpose, he may be met with a set-off, counter-claim, or other demand of the government, upon which judgment may go against him, without the intervention of a jury, if the court, upon the whole case, is of [the] opinion that the government is entitled to such judgment. If the claimant avails himself of the privilege thus granted [to sue the sovereign], he must do so subject to the conditions annexed by the government to the exercise of the privilege. Nothing more need be said on this subject. [Emphasis added.]
 
 
 33
 Seaboard has invoked the privilege of suing the government by filing its complaint in the Claims Court for review of the contracting officer's decision. Absent the waiver of sovereign immunity provided by the CDA, Seaboard could not have filed that complaint. Having invoked that privilege, Seaboard is subject to the conditions of such waiver, one of which is that it subjects itself to the possibility of a government counterclaim to be tried in a non-jury/Article I tribunal, conditions which Congress may impose. The Supreme Court has spoken unequivocally on this point in McElrath.
 
 
 34
 Appellants rely on Tull v. United States, 481 U.S. 412, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987), in support of a result contrary to McElrath. In Tull, the United States sued a violator of the Clean Air Act, 62 Stat. 1155, as amended 33 U.S.C. Sec. 1251 et seq., under a specific provision of that act which authorized suit in federal district court for the recovery of, inter alia, civil penalties. 481 U.S. at 414-15, 107 S.Ct. at 1833-34. Tull demanded a jury trial which was denied by the trial court and the denial was upheld in the court of appeals. Id. at 415-16, 107 S.Ct. at 1834-35. The Supreme Court reversed, holding that on the factual issue of Tull's liability, a jury trial was required under the Constitution because the remedy sought by the government was for money damages.[10] Id. at 427, 107 S.Ct. at 1840-41. Tull is clearly distinguishable in that the parties in Tull had no contractual agreement to resolve factual issues in accordance with non-Article III procedures. Moreover, the government had no alternative but to sue the defendant in district court to establish the defendant's liability.[11] Congress' authority to condition a statutory right to review based on limited waiver of sovereign immunity was not implicated.
 
 
 35
 In sum, it is only as a matter of legislative grace that Seaboard has access to any Article I or III forum. Before Congress' restriction of the government's contract options, the government, by contract provisions, could and did avoid litigation of the merits of its contract claims in any tribunal. Thus, the basis for Seaboard's suit in the Claims Court is a statutory right, which involves a waiver of sovereign immunity. That review is de novo, rather than limited, is also a matter of legislative grace. Seaboard is not, as it would have it, merely facilitating the government's obligation to litigate a contract claim for a determination of the government's rights. Seaboard is asserting its own right, a right to review that is given to Seaboard by the contract provisions incorporating the CDA which waives sovereign immunity to that extent.
 
 Conclusion
 
 36
 In conclusion, we agree with the government that under the lawful terms of the contract, Seaboard has agreed to only limited rights of review of the government's counterclaim. Under these circumstances, assuming it has the rights it asserts in the absence of its contract, Seaboard has waived any right to have the government counterclaim litigated in an Article III court before a jury. Moreover, the CDA's non-Article III/non-jury review procedures, enacted to restrict the government's dispute resolution options, are, under controlling precedent, constitutionally permissible as a condition on the waiver of sovereign immunity. The order of the Claims Court denying Seaboard's motion to dismiss is
 
 
 37
 AFFIRMED.
 
 
 
 *
 Judge Bissell, who died on February 4, 1990, did not participate in the decision in this case
 
 
 [1]
 All of the contracts here were executed after March 1, 1979, the effective date of the Contract Disputes Act (CDA). Apparently, one of the contracts was awarded prior to the effective date of the CDA, see Mount Adams Veneer Co. v. United States, Cl.Ct. No. 800-87C, but this contract was subsequently amended and before the Claims Court this contractor presented no argument that a pre-CDA contract has any effect different from post-CDA contracts for the purposes of the issues in this appeal. Consequently, it is treated as a post-CDA contract containing the dispute resolution clause in this appeal
 
 
 [2]
 See Glidden Co. v. Zdanok, 370 U.S. 530, 531-32, 82 S.Ct. 1459, 1463, 8 L.Ed.2d 671 (1962); Act of July 28, 1953, Sec. 1, 67 Stat. 226, added to 28 U.S.C. Sec. 171 (1988)
 
 
 [3]
 The CDA provides that a contractor can appeal "any claim" to the Claims Court. The United States, however, cannot appeal to the Claims Court. Thus, Claims Court jurisdiction is invoked solely by the contractor availing itself of this option
 
 
 [4]
 The government may obtain a judgment on the basis of such decision in a state or federal court without litigating the merits. United States v. Ulvedal, 372 F.2d 31, 34-35 (8th Cir.1967); United States v. Hammer Contracting Corp., 331 F.2d 173, 175-76 (2nd Cir.1964); United States v. Hamden Co-operative Creamery Co., 297 F.2d 130 (2d Cir.1961); United States v. Smith, 152 F.Supp. 322 (E.D.Pa.1957)
 
 
 [5]
 Appellants did not move for dismissal of their suits and apparently intend to proceed to challenge the validity of the contracting officer's decision in accordance with the CDA if unsuccessful in this appeal
 
 
 [6]
 The dispute clause under review in Wunderlich provided, in full:
 ARTICLE 15. Disputes--Except as otherwise specifically provided in this contract, all disputes concerning questions of fact arising under this contract shall be decided by the contracting officer subject to written appeal by the contractor within 30 days to the head of the department concerned or his duly authorized representative, whose decision shall be final and conclusive upon the parties thereto. In the meantime the contractor shall diligently proceed with the work as directed.
 Wunderlich, 342 U.S. at 99, 72 S.Ct. at 155.
 
 
 [7]
 While the government had to obtain a judgment on its claim in state or federal court, the merits of a final contracting officer's decision could not be litigated in that pro forma proceeding. See supra note 4
 
 
 [8]
 See Leasing Serv. Corp. v. Crane, 804 F.2d 828, 833 (4th Cir.1986); National Equip. Rental Ltd. v. Hendrix, 565 F.2d 255, 258 (2d Cir.1977); see also, Dreiling v. Peugeot Motors of America, 539 F.Supp. 402 (D.Colo.1982)
 
 
 [9]
 Appellants do not argue that they did not know they would not have a jury trial either in the Claims Court or Court of Claims. They urge, however, that nothing prohibited either court from adopting rules providing for jury trials, presumably pursuant to 28 U.S.C. Sec. 2503 (1988), and that the Constitution does not prohibit jury trials in Article I courts. We reject these arguments as grounds for reversal. A mere expectation of future rulemaking alone cannot defeat the known effect of proceeding under the CDA dispute resolution process any more than an argument that appellants expected the Congress to pass a statute negating the possibility that jury trials can be waived altogether. This is particularly the case where the government is a party to the suit since traditionally, Congress has almost always conditioned waivers of sovereign immunity on adjudication without a jury. Lehman v. Nakshian, 453 U.S. 156, 161, 101 S.Ct. 2698, 2701, 69 L.Ed.2d 548 (1981)
 
 
 [10]
 However, the Supreme Court interpreted the statute as not giving Tull a right to a jury determination on the issue of the amount of damage and directed that the amount be fixed by the judge. Tull, 481 U.S. at 427, 107 S.Ct. at 1840-41
 
 
 [11]
 That Congress placed adjudication of liability in the first instance in federal district court also led to a right to jury trial in two other recent Supreme Court decisions. Granfinanciera v. Nordberg, 492 U.S. ----, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989); Teamsters Local 391 v. Terry, --- U.S. ----, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990). Indeed, in Terry, the Court expressly recognized that whether Congress has permissibly entrusted the resolution of certain disputes to an administrative agency or specialized court involved considerations outside the traditional Seventh Amendment analysis applied in Tull. See Terry, n. 4