BRYSON, Circuit Judge,
dissenting.
I do not agree that the disputes clause of Minesen’s contract with the Army Morale Welfare and Recreation Fund (“the Fund”) constituted an enforceable waiver of Minesen’s right to appeal to this court, requiring the dismissal of this appeal. I would therefore hold that this court has jurisdiction over Minesen’s appeal. On the merits, however, I would affirm the Board’s dismissal of Minesen’s claims as duplicative of claims brought in the company’s ongoing action for breach of contract.
I
The majority dismisses Minesen’s claim based on a contractual provision that purports to bar any judicial review of a decision of the Armed Services Board of Contract Appeals. I consider that provision to be unenforceable, and I therefore conclude that the Contract Disputes Act (“CDA”) authorizes Minesen to take this appeal. In order to reach that issue, however, it is necessary to dispose of several preliminary arguments made by the government, all of which I find to be legally insupportable. The majority does not address those issues because it concludes that the waiver argument by itself disposes of this appeal.
A
The government first argues that Mine-sen’s claim is not covered by the CDA because the Fund is a nonappropriated fund instrumentality (“NAFI”). We held in Pacrim Pizza Co. v. Pirie, 304 F.3d 1291 (Fed.Cir.2002), that contracts with NAFIs other than those specifically identified in the Tucker Act, 28 U.S.C. § 1491, fall outside the scope of the CDA. 304 F.3d at 1293. Since the CDA offers the only route of appeal to this court from decisions of the Board, see Zinger Constr. Co. v. United States, 753 F.2d 1053, 1054 (Fed.Cir.1985), the government argues that Pacrim Pizza forecloses our review of Minesen’s claim.
The government’s argument runs afoul of this court’s recent en banc decision in Slattery v. United States, 635 F.3d 1298 (Fed.Cir.2011). We held in Slattery that *1344 “the source of funding of an agency’s activities or for payment of its judgments is not a limitation on Tucker Act jurisdiction.” Id. at 1320. Thus, contracts with NAFIs presumptively fall within the Tucker Act’s waiver of sovereign immunity, and “exceptions require an unambiguous statement by Congress.” Id. at 1320-21.
Although Slattery did not address the NAFI doctrine in the context of the CDA, its holding applies equally to claims brought under that Act, because the reach of the CDA is tied to the waiver of sovereign immunity in the Tucker Act. The CDA is applicable to “any express or implied contract (including those of the nonappropriated fund activities described in [the Tucker Act]) made by an executive agency....” 41 U.S.C. § 7102(a). We specifically held in Slattery that the enumeration of certain NAFIs in the Tucker Act did not signal any intent on the part of Congress to retain sovereign immunity over contracts with other NAFIs. 635 F.3d at 1313-14. After Slattery, the CDA must be deemed to apply to “any express or implied contract ... made by an executive agency,” irrespective of the source of funds used to carry out the contract. The dissenting judges in Slattery contended that Congress reaffirmed the existence of the NAFI doctrine when it enacted the CDA, id. at 1326-27 (Gajarsa, J., dissenting), but a majority of this court was not persuaded by that argument. Our holdings in Pacrim Pizza and prior cases that were predicated on the NAFI doctrine are no longer good law in the wake of Slattery. Thus, Minesen may proceed under the CDA even if the Fund is considered a NAFI.
B
The government next argues that no appeal can be taken in this case because the Fund is not an “executive agency,” and the CDA applies only to contracts entered into by “executive agencies.” See 41 U.S.C. § 7102(a). That position is contrary to the text of the CDA, which provides that nonappropriated fund activities entered into by executive agencies are covered by the Act. As a fallback position, the government relies on Pacrim Pizza to argue that the only NAFIs that qualify as “executive agencies” are those listed in the Tucker Act. As noted, however, Pacrim Pizza is no longer good law on that point. Therefore, the Fund must be considered an “executive agency” for purposes of the CDA.
C
The government’s next argument is that Minesen’s contract is not covered by the CDA because the contract does not concern a “procurement.” That argument is based on the government’s proposed definition of “procurement,” which is tied to the definition of the term “acquisition” found in the statutes governing the Office of Federal Procurement Policy. Those statutes define “acquisition” as a process that uses appropriated funds. 41 U.S.C. § 131. The government argues that because this court has defined “procurement” under the CDA as “all stages of the process of acquiring property or services,” Distributed Solutions, Inc. v. United States, 539 F.3d 1340, 1345-46 (Fed.Cir. 2008), the CDA does not cover government contracts that concern only nonappropriated funds.
This court made clear in United States v. General Electric Corp., 727 F.2d 1567 (Fed.Cir.1984), that “[n]othing in the [CDA] limits its application to appropriated funds.” 727 F.2d at 1570; see also Furash & Co. v. United States, 252 F.3d 1336, 1342 (Fed.Cir.2001) (“the CDA contains no express provision limiting it to agencies supported by appropriated *1345 funds”). Furthermore, the government’s “procurement” argument is at odds with the CDA’s express coverage of contracts involving nonappropriated fund activities. The definition of “acquisition” that the government relies on was added by the National Defense Authorization Act for Fiscal Year 2004, Pub.L. No. 108-136, § 1411, 117 Stat. 1392, 1663-64 (2003). The government has pointed to no evidence that the drafters of that unrelated statute intended for it to have the effect of narrowing the scope of the CDA. See United States v. Fausto, 484 U.S. 439, 453, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988) (“it can be strongly presumed that Congress will specifically address language on the statute books that it wishes to change”). In sum, the term “procurement” does not bar a government contractor from proceeding under the CDA simply because the contracting agency does not use appropriated funds for the contract.
D
The government’s principal argument on appeal is that the “disputes clause” of the contract between Minesen and the Fund constituted an enforceable waiver of Mine-sen’s right to appeal to this court. The majority agrees with the government on that issue, but I do not.
The clause at issue was specifically designed for incorporation into NAFI contracts at a time when the NAFI doctrine was in effect. See Army Regulation 215-4, ch. 2-14(b) (1987); DA Form 4075-R (1987) (clause 1-25). The Board’s charter grants it the authority to hear claims arising under the CDA, 48 C.F.R. ch. 2, app. A, but that route of review was of no use to contractors who entered into agreements with NAFIs, because of the NAFI doctrine. Even absent the disputes clause, Minesen’s appeal could not have been heard by this court before our decision in Slattery, because the Tucker Act had not been interpreted to waive sovereign immunity for causes of action arising from contracts with non-enumerated NAFIs. Moreover, Minesen could not have proceeded under the CDA because we had tied the scope of that Act to the NAFI doctrine, see Pacrim Pizza, 304 F.3d at 1293, and Board rulings that were not made pursuant to the CDA could not be appealed to this court, Zinger Constr., 753 F.2d at 1054. Thus, at the time the contract was signed, the disputes clause set forth Minesen’s only right to review of decisions of the contracting officer. And the disputes clause allowed the Board (but not this court) to hear appeals under a provision of its charter that permits it to review claims relating to contracts entered into by any authorized representative of the Army, irrespective of the source of funds used to carry out the contract. 48 C.F.R. ch. 2, app. A; see, e.g., In re Atlantis Constr. Corp., ASBCA No. 44044, 96-1 BCA ¶ 28,045 (assuming jurisdiction over appeal based not on the CDA but on the disputes clause in a contract with a NAFI).
In the aftermath of Slattery, the disputes clause is in tension with 41 U.S.C. § 7107(a)(1)(A), the provision of the CDA that permits this court to review decisions of the Boards of Contract Appeals. The majority concludes that the disputes clause controls based on the general principle that a party can freely contract away its right to judicial review. That principle is not applicable, however, when a provision of a government contract conflicts with a federal statute. Am. Airlines, Inc. v. Austin, 75 F.3d 1535, 1538 (Fed.Cir.1996); see generally The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) (contract’s choice-of-forum clause unenforceable “if enforcement would contravene a strong public policy of the forum in which the suit is *1346 brought, whether declared by statute or by judicial decision”); Restatement (Second) of Contracts § 178 (1981). The majority rules that enforcing a contractual waiver of the right of appeal to this court is not contrary to public policy. The court’s ruling, however, ignores the fact that Congress has already made the determination that enforcing such a waiver is contrary to public policy. We are obligated to respect that determination. See Restatement (Second) of Contracts § 178 (“A promise or other term of an agreement is unenforceable on grounds of public policy if legislation provides that it is unenforceable....”).
The CDA provides the exclusive remedy for all contract disputes that fall within its scope. Dalton v. Sherwood Van Lines, Inc., 50 F.3d 1014, 1017 (Fed.Cir.1995). It provides a right to judicial review of Board decisions, 41 U.S.C. § 7107(a)(1)(A), and it prescribes particular standards of review that this court must adhere to “[n]otwithstanding any contract provision ... to the contrary,” id. § 7107(b). The disputes clause, which prohibits any such review, thus conflicts with the CDA. As a “contract provision to the contrary,” the disputes clause must yield to the CDA.
While the provision of the CDA that grants the right of appeal to this court, 41 U.S.C. § 7107(a)(1)(A), does not contain language regarding conflicting contractual provisions, the standard of review provision, id. § 7107(b), reveals the intent of Congress to permit review by this court of all government contract disputes brought under the CDA.[1] The language of that provision hews closely to the language of the Wunderlich Act, Pub.L. No. 83-356, 68 Stat. 81 (1954), which was specifically intended to prohibit the government from inserting jurisdiction-defeating provisions in government contracts. The Wunderlich Act was repealed during the pendency of this appeal as part of the recodification of Title 41. Pub.L. No. 111-350, 124 Stat. 3677, 3859 (Jan. 4, 2011). The Wunderlich Act was intended to be “superseded by section 10 of the Contract Disputes Act of 1978 (41 U.S.C. 609 [recodified at 41 U.S.C. § 7107]),” H.R.Rep. No. 111-42, at 9 (2009),[2] so even prior to its repeal, the Wunderlich Act would not have controlled this case. Nevertheless, an understanding of the Wunderlich Act is important to the proper interpretation of the CDA’s judicial review provisions.
The Wunderlich Act consisted of two provisions. The first allowed for judicial review of any agency decision alleged to be *1347 arbitrary or capricious, unsupported by substantial evidence, fraudulent, or made in bad faith, notwithstanding any contractual provision to the contrary. Pub.L. No. 83-356 (codified before repeal at 41 U.S.C. § 321); see S & E Contractors, Inc. v. United States, 406 U.S. 1, 17-18, 92 S.Ct. 1411, 31 L.Ed.2d 658 (1972) (decisions of boards of contract appeals fall within the scope of this provision). The second stated that “[n]o Government contract shall contain a provision making final on a question of law the decision of any administrative official, representative, or board.” Pub.L. No. 83-356 (codified before repeal at 41 U.S.C. § 322). The Wunderlich Act did not itself waive sovereign immunity for government contractor claims, but it allowed contractors to bring suit under the Tucker Act.
The Wunderlich Act prevented government contractors from “bargaining] away their right to full-scale judicial review of administrative decisions on questions of law,” Lockheed Aircraft Corp. v. United States, 375 F.2d 786, 790 (Ct.Cl.1967), or their right to limited judicial review of agency decisions on questions of fact. Congress intended to “retain for the judiciary their proper functions,” notwithstanding standard government contract clauses purporting to withdraw judicial review. Hoel-Steffen Constr. Co. v. United States, 684 F.2d 843, 851 (Ct.C1.1982); see also S & E Contractors, 406 U.S. at 14, 92 S.Ct. 1411 (describing the purpose of the Wunderlich Act as “to free citizens from a form of administrative tyranny”); Seaboard Lumber Co. v. United States, 903 F.2d 1560, 1565 (Fed.Cir.1990) (stating that the Wunderlich Act “limit[ed] by statute ... the contractual options previously available to the government”); Hoelr-Steffen Constr., 684 F.2d at 851 (“we have in the history of the Wunderlich Act a strong expression of repugnance by Congress to the creation of decisional finality by contract clause”). Such clauses were recognized by Congress as contrary to the “tradition that everyone should have his day in court.” H.R.Rep. No. 83-1380, at 4 (1954), 1954 U.S.C.C.A.N. 2191, 2194. Because contractors lacked ordinary negotiating power when entering into government contracts, provisions that made an agency’s decision unappealable were simply voided. Id. at 5. The Wunderlich Act, in short, was designed to invalidate jurisdiction-defeating clauses such as the one at issue in this case.
In the Contract Disputes Act, Congress chose language that carefully tracked the Wunderlich Act in order to make clear that the CDA was continuing the prohibition on contractual provisions that purport to foreclose judicial review. Subsection 7107(b) of Title 41, formerly subsection 609(b) of the same title, states:
Notwithstanding any contract provision, regulation, or rule of law to the contrary, in an appeal by a contractor or the Federal Government from the decision of an agency board ...
(1) the decision of the agency board on a question of law is not final or conclusive; but
(2) the decision of the agency board on a question of fact is final and conclusive and may not be set aside unless the decision is—
(A) fraudulent, arbitrary, or capricious;
(B) so grossly erroneous as to necessarily imply bad faith; or
(C) not supported by substantial evidence.
The CDA was not designed to diminish the statutory right government contractors previously held under the Wunderlich Act to obtain judicial review of decisions of agency boards. To the contrary, the CDA broadened contractors’ appeal rights. See *1348 Seaboard Lumber, 903 F.2d at 1565 (“The CDA, which followed the Wunderlich Act, further restricted the government’s options on dispute resolution.”); id. (describing CDA judicial review provisions as “broader” than those of the Wunderlich Act).
Under the CDA, contractors are given the option either to pursue their claims before an agency board or to bring an action directly in the Court of Federal Claims. 41 U.S.C. § 7104. Appeal rights to this court are available under either circumstance. See 41 U.S.C. § 7107(a)(1)(A) (providing for appeal to this court of a Board decision); 28 U.S.C. § 1295(a)(3) (providing for appeal to this court from the Court of Federal Claims). The standard of review in both the agency board and the Court of Federal Claims is de novo. Wilner v. United States, 24 F.3d 1397, 1401-02 (Fed.Cir.1994) (en banc) (agency board review); 41 U.S.C. § 7104(b)(4) (Court of Federal Claims review); see also id. § 7103(e) (contracting officer’s “specific findings of fact are not binding in any subsequent proceeding”). The standard of review applicable to appeals to this court from agency boards of contract appeals is the same as that set forth in the Wunderlich Act. Compare Pub.L. No. 83-356 with 41 U.S.C. § 7107(b); see S.Rep. No. 95-1118, at 14 (1978), 1978 U.S.C.C.A.N. 5235 at 5248 (noting that the CDA adopted the Wunderlich Act’s “standards of finality of agency board decisions”); H.R.Rep. No. 95-1556, at 25-26 (1978) (same). And the legislative history of the CDA makes it clear that Congress intended the CDA to continue to permit contractors to appeal to this court from decisions of agency boards of contract appeals notwithstanding any contractual provision to the contrary. See S.Rep. No. 95-1118, at 26 (“it would be an anomaly in the American judicial system for [agency boards] to have the final authority on decisions that set important precedents in procurement law”); see also id. at 12 (noting that certain disputes “ultimately must go to court”); id. at 13 (agency boards are a forum for the “initial resolution of disputes”).
We addressed a situation similar to the present case in Bumside-Ott Aviation Training Center v. Dalton, 107 F.3d 854, 858-59 (Fed.Cir.1997). The contractual provision at issue in that case foreclosed review of a contracting officer’s calculation of an “award fee” due to the contractor. 107 F.3d at 856. This court held the clause unenforceable in light of two provisions in the CDA. One noted that a contracting officer’s factual determinations “shall not be binding in any subsequent proceeding.” 41 U.S.C. § 605(a) (1994), recodified as 41 U.S.C. § 7103(e). The other stated that an appeal from a contracting officer’s decision “shall proceed de novo in accordance with the rules of the appropriate court.” 41 U.S.C. § 609(a)(3) (1994), recodified as 41 U.S.C. § 7104(b)(4). We reasoned that “any attempt to deprive the Board of power to hear a contract dispute that otherwise falls under the CDA conflicts with the normal de novo review mandated by the CDA and subverts the purpose of the CDA.” Burnside-Ott, 107 F.3d at 858; see also id. at 859 (“the CDA trumps a contract provision inserted by the parties that purports to divest the Board of jurisdiction, unless the contract provision otherwise depriving jurisdiction is itself a matter of statute primacy”). We also noted that the purpose behind the CDA was to equalize bargaining power between the government and its contractors and to prevent the government from using disputes clauses to “commandeer the final decision on all disputes of fact arising under the contract.” Id. The majority attempts to distinguish Bum-side-Ott by stating that “it did not address *1349 waiving appeals from the ASBCA to the Federal Circuit.” I am not persuaded by that distinction. In Bumside-Ott, after determining that the Board did have jurisdiction to hear the appeal, notwithstanding the contractual provision at issue, we addressed the merits of the case, reviewing the issue de novo. See 107 F.3d at 860. By doing so, we made clear that the nonwaivable right of review conferred by the CDA extended not just to the Board, but to this court as well.
Although the contractual provision at issue in this case purports to displace the provisions of the CDA altogether, it cannot have the effect of foreclosing a direct appeal to the Court of Federal Claims, because 41 U.S.C. § 7104(b)(1) provides that such an appeal can be brought “notwithstanding any contract provision ... to the contrary.” Id.; see Seaboard Lumber, 903 F.2d at 1565 (in the CDA “Congress mandated ... dual avenues of review either by appeal to a Board of Contract Appeals or by a direct access suit in the Court of Claims”); S.Rep. No. 95-1118, at 11-12 (addressing the importance of contractors being able to directly access a “fully judicialized, totally independent forum.... ”). The court’s decision in this case therefore creates an anomaly. Notwithstanding the disputes clause, Minesen could have appealed the Contracting Officer’s decision directly to the Court of Federal Claims rather than the Board. See § 7104(b)(1). If Minesen had followed that course, the disputes clause would have been inapplicable, and there would have been no bar to review both in the Court of Federal Claims and ultimately in this court. Yet the majority holds that by choosing to appeal to the Board, Minesen has forfeited its appeal rights in this court, notwithstanding our statutory jurisdiction over appeals from Board decisions under the CDA. That is a type of contractual restriction on judicial review that the. CDA, in following the Wunderlich Act, sought to avoid. While the CDA provided for “a flexible system” that allows a claimant “to choose a forum according to ... the degree of due process desired ... balanced by the time and expense considered appropriate for the case,” it was important to the statutory system that judicial review was available through either route. S.Rep. No. 95-1118. I therefore disagree with the majority’s ruling that the contractual provision preventing appeal to this court is enforceable.
II
Because I believe that this court has jurisdiction over this appeal, I would reach the merits. On the merits, however, I would affirm the Board’s decision that Minesen’s complaint is duplicative of the complaint in its pending quantum action.
The Board has discretion to dismiss a complaint that it deems duplicative of a pending related action. See Finch v. Hughes Aircraft Co., 926 F.2d 1574, 1577 (Fed.Cir.1991); see generally Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (“the general principle is to avoid duplicative litigation”). In the first count of its complaint in this action, Minesen asserts that the Fund’s “knowing failure to cure the breach” of contract identified in the earlier proceeding constituted an independent material breach of contract. The second count of the complaint alleges that the Fund repudiated the contract by not curing its breach. Mine-sen requests damages for both counts in accordance with the contract’s termination-for-convenience provision. In other words, Minesen treats the contract as effectively terminated and seeks to recover damages for total breach.
That theory of damages was rejected by the Board in the original proceeding. Al *1350 though the Board determined that the Fund was in breach of the contract, the Board did not characterize that breach as a total breach or an anticipatory repudiation. Instead, the Board remanded for a calculation of damages for the Fund’s ongoing partial breach of contract. Thus, Minesen’s second complaint sought to revive a cause of action that had been rejected in a prior proceeding.
The Board determined that Minesen’s second complaint did not raise any new cause of action that was not addressed in the previous proceeding, and the Board therefore dismissed the complaint. The Board reasoned that just as Minesen could not recover damages for total breach of contract in the initial proceeding, it could not recover those damages in the subsequent proceeding based only on the passage of time. Instead, it could bring a series of actions for partial breach of contract until the government performed. See Ind. Mich. Power Co. v. United States, 422 F.3d 1369, 1377 (Fed.Cir.2005). The Board noted that the only new facts alleged by Minesen in the second proceeding “relate[ ] to the amount of time the parties are taking to resolve the controversy in [the prior proceeding].” The Board did not abuse its discretion in determining that delay alone is insufficient to justify the initiation of a separate proceeding on a theory of total contract breach. On the merits, therefore, I would affirm the decision of the Board. Because I would hold that this court has jurisdiction to address the merits of Minesen’s appeal, I respectfully dissent from the majority’s decision on that issue.

. Because Minesen did not discuss section 7107(b) in its brief, the majority deems it improper to consider section 7107(b) in analyzing whether appeals under section 7107(a) can be waived. The question whether the right to appeal under section 7107(a) can be waived was fully briefed by the parties, and Minesen argued that under applicable case law the CDA bars contractual waivers of that right. Reference to section 7107(b) helps show why that statutory argument is correct and why the case law on which Minesen relies should be applied here. When analyzing a party’s argument, this court is not confined to the party’s table of authorities in determining whether that argument has merit. That is particularly true with respect to jurisdictional questions, as we have an independent duty to inquire into whether we have jurisdiction over a matter, without regard to how (or even whether) the parties have briefed that issue.

. According to the legislative history, the Wunderlich Act was, in fact, meant to be repealed by the CDA, but "due to apparent oversight, repeal was not enacted.” H.R.Rep. No. 111-42, at 9; see also S.Rep. No. 95-1118, at 34 (1978), 1978 U.S.C.C.A.N. 5235 at 5267 (“Section 14(1) repeals 41 U.S.C. 321-322. The provisions in the repealed Wunderlich Act set a standard of review for agency board appeals which is no longer applicable in [the CDA].”).